DECISION
{¶ 1} Relator, Tim E. Dummermuth, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its *Page 2 
order denying him permanent total disability compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law (attached as Appendix A).
 {¶ 3} The magistrate first determined the commission violated Ohio Adm. Code 4121-3-34(C)(4)(d) when it considered and relied on Dr. Murphy's report in denying relator's permanent total disability application. As the magistrate explained, the report, submitted subsequent to the hearing on relator's application, was not admissible because neither party requested the hearing administrator to approve the report as newly discovered evidence that is relevant to issue of permanent total disability.
 {¶ 4} Relator further requested an order requiring the commission to reconsider his application for permanent total disability compensation based upon his additionally allowed condition. The magistrate determined that because relator's motion for recognition of an additionally allowed condition was filed subsequent to his application for permanent total disability compensation, Ohio Adm. Code 4121-3-34(C)(3)(c) dictates that the motion be processed after the determination of relator's permanent total disability application. As a result, the magistrate concluded "relator is not entitled to have the commission consider that condition with his [permanent total disability] application at issue in this case." (Magistrate's Decision, ¶ 32.)
 {¶ 5} Accordingly, the magistrate determined this court should issue a writ of mandamus ordering the commission to vacate its staff hearing officer's order of June 28, *Page 3 
2007, and to enter a new order either granting or denying the permanent total disability application without consideration of Dr. Murphy's report.
 {¶ 6} No objections were filed to the magistrate's decision.
 {¶ 7} Finding no error of law or other defect on the face of the magistrate's decision, we adopt it as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its staff hearing officer's order of June 28, 2007, and to enter a new order either granting or denying relator's permanent total disability application without considering Dr. Murphy's report.
Writ granted.
 KLATT and FRENCH, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 8} In this original action, relator, Tim E. Dummermuth, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact: {¶ 9} 1. On February 3, 2004, relator sustained an industrial injury while employed as a meter reader for respondent Ohio Power Company ("employer"), a self-insured employer under Ohio's workers' compensation laws. On that date, relator slipped and fell on ice.
 {¶ 10} 2. The industrial claim was initially allowed for "displaced trimalleolar fracture left ankle" and was assigned claim number 04-806745. The claim was subsequently allowed for "reflex sympathetic dystrophy left lower extremity; right carpal tunnel syndrome." *Page 5 
 {¶ 11} 3. On February 5, 2005, relator underwent surgery to the left ankle which was performed by James E. McQuillan, M.D. According to his operative report, Dr. McQuillan performed an "[o]pen reduction and internal fixation, left ankle trimalleolar fracture with internal fixation of fibula, distally and syndesmosis."
 {¶ 12} 4. On December 9, 2005, relator filed an application for PTD compensation. In support of his application, relator submitted a report from Dr. McQuillan dated November 10, 2005, stating:
 I have had the opportunity to care for Mr. Tim Dummermuth for the last several months. He sustained an [sic] left ankle fracture that required surgery. Postoperatively his ankle fracture healed nicely; however he developed a very severe reflex sympathetic dystrophy and continues to require the use [of] crutches well over one year after his original injury.
 In addition to requiring crutches to ambulate, he is on multiple medications. These medications are required in order for him to participate with [sic] activities of daily living. However these medications also cloud his ability to think clearly.
 Because of his persistent pain, inability to ambulate effectively, and because of the altered mental status caused by his medication, it is my impression that he is permanently and totally disabled and unable to engage in remunerative employment.
 {¶ 13} 5. On January 26, 2006, at the employer's request, relator was examined by Satish Mahna, M.D., who wrote:
 DISCUSSION:
 As per the accepted facts, Mr. Dummermuth suffered an injury in the course and scope of his employment which is recognized for displaced trimalleolar fracture left ankle; reflex sympathetic dystrophy left lower extremity; right carpal tunnel syndrome. *Page 6 
 Considering his symptoms, objective findings, treatment rendered to date and the available records, within a reasonable degree of medical probability and certainty, I am of the opinion that he is not permanently and totally disabled from engaging in sustained remunerative employment. As reflex sympathetic dystrophy may or may not remain disabling for [an] indefinite period of time, there is some room for improvement in the future. Even, given his present condition, he may perform work with restrictions.
 OPINION:
 [One] Within a reasonable degree of medical probability and certainty, I am of the opinion that Mr. Dummermuth is not permanently and totally disabled from engaging in sustained remunerative employment based upon the allowed conditions in this claim.
 [Two] Given his present symptoms, objective findings, and the available records, within a reasonable degree of medical probability and certainty, I am of the opinion that he is capable of performing sedentary work where he has an option to sit or stand on [an] as needed basis. In addition, he should avoid prolonged awkward positioning of the right hand/wrist joint, direct pressure over carpal tunnel, frequent repetitive movements of the right hand and exposure to hand vibrations. If drowsy, he should be careful when driving, working with moving objects (e.g. conveyor belts or other moving parts of machinery) and working on unprotected heights.
 [Three] Participation in a rehabilitation program is a viable option for Mr. Dummermuth to re-enter the work force.
 {¶ 14} 6. On March 21, 2006, at the commission's request, relator was examined by Sushil M. Sethi, M.D., who wrote:
 From the evaluation today the claimant is capable of medium work, which means exerting up to 20-50 lb of force occasionally, 10-25 lb of force frequently and/or greater than negligible up to 10 lb of force constantly to move objects. The physical demand requirements are in excess of those for light work. The claimant is muscular and well-built. He is 44 years old and has no physical problems with his upper extremities. He may need to change his posture frequently, but he can *Page 7 
perform most of the job as required. He is limited by the left lower extremity, but he can pretty well perform all the activities required of the rest of his body. I do not find that the claimant is permanently and totally impaired from any job.
 {¶ 15} 7. Dr. Sethi also completed the physical strength rating form on which he opined that relator is capable of performing medium work.
 {¶ 16} 8. In support of his application, relator submitted vocational reports from John Ruth, a vocational expert. Mr. Ruth opined that relator is unable to perform any sustained remunerative employment.
 {¶ 17} 9. The employer submitted a vocational report from Anthony Stead dated April 30, 2006. In his report, Mr. Stead opined that relator is capable of sustained remunerative employment.
 {¶ 18} 10. On February 15, 2007, relator's PTD application was heard by a staff hearing officer ("SHO"). The hearing was recorded and transcribed for the record.
 {¶ 19} 11. On February 23, 2007, the SHO mailed a so-called "interlocutory advisement order," stating:
 This matter is taken under advisement.
 An Order shall be issued without submission of further evidence and without further hearing.
 This order is interlocutory in nature and not subject to appeal pursuant to the Ohio Administrative Code Rule 4121-3-09.
 {¶ 20} 12. On February 26, 2007, relator moved that his claim be additionally allowed for "major depression, single episode, moderate (DSM-IV 296.22)." In support, relator submitted a report from psychologist Ryan Dunn, Ph.D., dated December 2, 2005. *Page 8 
 {¶ 21} 13. Apparently, relator's February 26, 2007 motion prompted the employer to have relator examined by psychologist Michael A. Murphy, Ph.D., on April 12, 2007. Dr. Murphy issued a nine-page narrative report that was filed with the commission on May 8, 2007. The report states:
 Mental Status Examination: The Injured Worker reports he is distracted by pain. He states, "It's constant." He reports that medications interfere with concentration. There is no evidence of cognitive dysfunction due to psychoses, head injury, or organicity. He shows no obsessions, phobias, or ideas of reference. Delusions, obsessive ruminations, and hallucinations are absent. The Injured Worker's thoughts are clear and understandable. Paranoid ideations are absent. There is no tangentiality, circumstantiality, disturbances of logic, or distractibility. His associations are reasonably well organized. The Injured Worker answers questions appropriately. He reports that short-term memory is impaired intermittently. He states, "I forget if I have taken my pills. I have a problem with pills." Long-term memory is intact. He states, "Not too bad." He gave a reasonable account of his activities and life events in chronological order. He is a good historian. He reports that medications interfere with memory functions. He states, "I take so many."
 * * *
 Concentration, Persistence, and Pace: The Injured Worker is able to sustain focus or attention long enough to permit completion of tasks in the work place. He is able to complete a normal workday and work week and maintain regular attendance from a psychological standpoint.
 * * *
 * * * The Injured Worker has been on Zoloft and Ambien for 1½-2 years.
 The Injured Worker is reporting psychomotor slowing, and memory and concentration difficulties associated with his medication regime. To some extent, the medications are adding to his appearance of depression. The Injured Worker *Page 9 
also reports previous unrelated health issues (i.e., enlarged prostate, 2004; myocarpitis, 1997; and perocapitius, 2000).
 * * *
 The alleged condition of depression is direct and proximate to the 2/3/04 injury. The Injured Worker's depression is stabilized vis-à-vis his medications. In my opinion, the Injured Worker's condition is not work-prohibitive in itself, nor is he temporarily or totally disabled. Medically, his medications should be evaluated as to his reported side effects.
 The Injured Worker does exhibit mild social and occupational impairment. His depression corresponds to the injury and he has been on psychotropics for several years. The Injured Worker's psychological history was unremarkable prior to his injury. I do believe his depression at this time is mild and has responded favorably to his psychotropics.
 {¶ 22} 14. On June 28, 2007, the SHO mailed an order denying relator's PTD application. The SHO's explains:
 After full consideration of the issue it is the order of the Staff Hearing Officer that the Application, filed 12/09/2005, for Permanent and Total Disability Compensation, is denied.
 * * *
 On 02/03/2004 the injured worker was walking on his route reading meters when he slipped on ice and fell. As a result of the fall the injured worker sustained an [sic] displaced trimalleolar fracture of his left ankle. The injured worker later developed reflex sympathetic dystrophy of the left lower extremity (RSD) and right carpal tunnel syndrome as a result of using crutches.
 As a result of the allowed conditions the injured worker has undergone extensive physical therapy, aquatic therapy, a series of four epidural blocks, as well as surgery consisting of an internal fixation of his left ankle. The injured worker had a spinal cord stimulator inserted; however, the device increased his problems and it was removed shortly after it had been inserted. Currently, the injured worker takes a number of medications for his allowed conditions. It is the injured *Page 10 
worker's contention that his numerous medications interfere with his ability to concentrate. Because of his constant pain, inability to concentrate, and his reliance upon crutches to ambulate the injured worker contends he is unable to engage in any sustained remunerative employment.
 The Staff Hearing Officer finds that the injured worker retains the ability to engage and [sic] sustained remunerative employment; therefore, he is not permanently and totally disabled. In arriving at this conclusion the Staff Hearing Officer relies upon the 01/26/2006 report of Dr. Mahna who performed an independent medical examination on behalf of the employer.
 Upon examination of the injured worker Dr. Mahna found a full range of motion of the right wrist and joints of the hand without any discomfort. He found that the injured worker had a positive tinels and phalens signs. The injured worker had some swelling and discoloration about the left foot and ankle area, as well as some decreased range of motion with discomfort at the end of range of motion in all planes. No temperature changes were noted during Dr. Mahna's examination. Based upon his examination Dr. Mahna concluded that the injured worker's allowed conditions accounted for a 15% permanent partial impairment, had reached maximum medical improvement, and limited the injured worker to performing sedentary work.
 In accordance with Dr. Mahna's opinion the Staff Hearing Officer finds that the injured worker is capable of preforming [sic] sedentary work.
 The Ohio Administrative Code 4121-3-34(B)(A) [sic] defines sedentary work as follows:
 Exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. *Page 11 
 Although, the claimant retains the physical ability to engage in some work activity permanent total disability may never be denied based upon physical ability to engage in sustained remunerative employment without considering the non-medical disability factors of age, education, and past work history. State ex rel. Stephenson v. Indus. Comm. 31 Ohio St. 3d 161 (1987). Therefore, the Staff Hearing Officer will evaluate what effect the aforementioned non-medical disability factors have on the claimant['s] ability to work.
 The injured worker is a 45 year old high school graduate. The injured worker earned average grades while he attended school and he reports no problems with reading, writing, or doing basic math. After he finished high school the injured worker took a job as a maintenance man at an apartment complex and maintained that employment for approximately one year. While employed as a maintenance man the injured worker was responsible for keeping the grounds at the apartment building and performing minor repairs. After leaving his employment at the apartment complex the injured worker began working in a factory were [sic] he preformed unskilled factory work for approximately eight years. In 1985 the injured worker entered the US Army were [sic] he preformed the job of cargo specialist. According to the injured worker's testimony this position consisted of mainly driving trucks. After leaving the army the injured worker obtained employment at a small factory where he again did unskilled factory work. The injured worker's next job was a delivery driver. As a delivery driver the injured worker was responsible for delivering snacks and setting up displays in the stores. After leaving this job the injured worker got a job as a delivery crew leader with a moving company. As a delivery crew leader the injured worker was responsible for delivering household and office furnishings as well as supervising the other delivery personnel. On his permanent total disability application the injured worker indicated that this position required the use of public relation skills, problem solving, and accounting skills. The injured worker spent the last 14 years working as a meter reader for the employer of record. While employed as a meter reader he was required to do a lot of walking, and use a hand held computer to input readings from the meters. According to the injured worker's statement on his permanent disability application the technical skills used in preforming [sic] his meter reading job included computer trouble shooting, public *Page 12 
and customer relations, rerouting accounts into more efficient reading order, and radio operation.
 The Staff Hearing Officer finds persuasive the vocational assessment done by Antony [sic] Stead on behalf of the employer. After reviewing the injured worker's non-medical disability factors as well as the medical report[s] of the various physicians who examined the injured worker on the issue of permanent total disability, Mr. Stead, opined that the injured worker remained employable. According to Mr. Stead the injured worker's current level of education is sufficient to allow him to engage in skilled and unskilled work; therefore, it is not an impediment to employment. Mr. Stead offers the same opinion with regard to the injured worker's past work history. Likewise, Mr. Stead opined that the injured worker's age would not prohibit him from doing work in competition with others. Therefore, Mr. Stead concluded that the injured worker is capable of working as a rental clerk, cashier at a check cashing agency, customer service representative, dispatcher, or telephone answering service person.
 The injured worker's testimony, as well as his permanent total disability application revealed that he performed a variety of jobs. The injured worker admits that his most recent employment required some public relations skills and it required problem solving skills. In addition, the injured worker has preformed [sic] jobs that required supervisory and accounting skills. All of the aforementioned skills could be transferred to entry level sedentary work. Given the injured worker's education, he would certainly be able to complete any short term training needed to preform [sic] entry level sedentary work. Certainly, the injured worker['s] age of 45 leaves enough work life remaining to make any short term retraining needed a viable option.
 After considering the injured worker's non-medical disability factors and Mr. Stead's vocational assessment, the Staff Hearing Officer finds that the injured worker remains employable. The injured worker still asserts that his ability to concentrate has been impaired by the medication he takes and this impairment makes its [sic] impossible for him to work. Therefore, the Hearing Officer will evaluate the effect of the medications on the injured worker's ability to work. *Page 13 
 The injured worker's ability to concentrate has been considered by Michael A. Murphy, Ph.D., who evaluated the injured worker on a pending motion for additional allowance of major depression single episode. Dr. Murphy was aware of the injured worker's complaints regarding the side effects of his medications; yet he made no clear finding that the injured worker had psychomotor motor slowing as a result of his medications or his alleged psychological conditions. Dr. Murphy states that the medications are adding to the injured workers' depressed appearance. However, when Dr. Murphy evaluated the injured worker's concentration, persistence and pace he stated, "the injured worker is able to maintain focus and attention long enough to permit completion of tasks in the work place. He is able to complete a normal work day and work week and maintain regular attendance from a psychological stand point."
 Although Dr. Murphy evaluated the injured worker to determine the presence of a physiological condition, impairments in motor function whether from physical or psychological causes would have presented themselves if they were in fact present. Based on Dr. Murphy's report, the Staff Hearing Officer finds that the effects on the injured worker's concentration from the prescribed medications do not preclude sustained remunerative employment.
 An injured worker is to be considered permanently and totally disabled if he is unable to preform [sic] sustained remunerative employment using his present skills or those skills that can reasonably be acquired. In this case the evidence shows that the injured worker is able to preform [sic] sedentary work using his present skills. The evidence also shows that the injured worker is capable of learning skills if needed so that he could engage in sedentary work; therefore, the Staff Hearing Officer finds that the injured worker is not Permanently and Totally Disabled.
 {¶ 23} 15. On August 17, 2007, relator, Tim E. Dummermuth, filed this mandamus action.
Conclusions of Law: *Page 14 {¶ 24} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 25} Effective June 1, 1995, the commission promulgated Ohio Adm. Code 4121-3-34 which sets forth the commission's rules for the processing and adjudication of PTD applications.
 {¶ 26} Effective June 1, 1995, Ohio Adm. Code 4121-3-34(C) sets forth the rules for the processing of PTD applications.
 {¶ 27} Effective June 1, 1995, Ohio Adm. Code 4121-3-34(C)(3)(c) provides:
 If a motion requesting recognition of additional conditions is filed on or prior to the date of filing for permanent total disability compensation, such motion(s) shall be processed prior to the processing of the application for permanent total disability compensation. However, if a motion for recognition of an additional condition is filed subsequent to the date of filing of the application of permanent total disability, the motions shall be processed subsequent to the determination of the application for permanent total disability compensation.
 Ohio Adm. Code 4121-3-34(C)(4) provides:
 (a) The injured worker shall ensure that copies of medical records, information, and reports that the injured worker intends to introduce and rely on that are relevant to the adjudication of the application for permanent total disability compensation from physicians who treated or consulted the injured worker within five years from date of filing of the application for permanent total disability compensation, that may or may not have been previously filed in the workers' compensation claim files, are contained within the file at the time of filing an application for permanent total disability.
 (b) The employer shall be provided fourteen days after the date of the industrial commission acknowledgement letter provided for in paragraph (C)(2) of this rule to notify the commission if the employer intends to submit medical evidence relating to the issue of permanent total disability compensation to the commission. Should the employer make *Page 15 
such written notification the employer shall submit such medical evidence to the commission within sixty days after the date of the commission acknowledgement letter unless relief is provided to the employer under paragraph (C)(4)(d) of this rule. * * *
 * * *
 (d) Upon the request of either the injured worker or the employer and upon good cause shown, the hearing administrator may provide an extension of time, to obtain the medical evidence described in paragraphs (C)(4)(a) and (C)(4)(b) of this rule. Thereafter, no further medical evidence will be admissible other than additional medical evidence approved by a hearing administrator that is found to be newly discovered medical evidence that is relevant to the issue of permanent total disability and which, by due diligence, could not have been obtained under paragraph (C)(4)(A) or (C)(4)(b) of this rule.
 {¶ 28} It is clear that the commission violated Ohio Adm. Code4121-3-34(C)(4)(d) when it considered and relied upon Dr. Murphy's report in denying relator's PTD application. Under Ohio Adm. Code4121-3-34(C)(4)(d), Dr. Murphy's report was not admissible because neither party requested that the hearing administrator approve Dr. Murphy's report as being newly discovered evidence relevant to the PTD application.
 {¶ 29} Here, the commission concedes that it violated Ohio Adm. Code4121-3-34(C)(4)(d) when it considered and relied upon Dr. Murphy's report.
 {¶ 30} Citing State ex rel. Roy v. Indus. Comm. (1996),74 Ohio St.3d 259, relator argues that this court should issue a writ of mandamus that orders the commission to vacate its SHO's order of June 28, 2007 denying the application and to reconsider the application based upon the subsequently allowed psychological condition. *Page 16 
 {¶ 31} The magistrate disagrees that this court should issue a writ of mandamus that orders the commission to now consider the psychological claim allowance in the adjudication of the PTD application.
 {¶ 32} In Roy, following a hearing on the PTD application, William D. Roy moved for an additional allowance of a psychiatric condition. Thereafter, the commission denied the PTD application and Roy moved for reconsideration. The psychiatric condition was allowed some ten months prior to the denial of reconsideration which occurred on April 13, 1993. In granting the writ of mandamus, the Roy court explained:
 Once the commission allowed the psychiatric condition prior to the commission's conclusive denial of permanent total disability compensation, the issue became one of additional conditions, rather than one of additional evidence. Unlike additional evidence, there is no precedent supporting the denial of permanent total disability compensation absent consideration of all allowed conditions. The commission, therefore, erred in not granting reconsideration and incorporating the condition into its deliberations.
Id. at 264. (Emphasis sic.)
 {¶ 33} Roy is distinguishable from the instant case in at least two respects. First, the psychological claim allowance was granted in this case after the commission denied the PTD application. Thus, the psychological condition was not an allowance of the claim when the PTD application was adjudicated in this case. Secondly, the commission's rules relating to the processing and adjudication of PTD applications, i.e., Ohio Adm. Code 4121-3-34, had not been promulgated when Roy's PTD application was finally adjudicated by the commission in April 1993. Thus, Ohio Adm. Code 4121-3-34(C)(3)(c) was not before the commission or the court in the Roy case. *Page 17 
 {¶ 34} Unlike Roy, this case is governed by Ohio Adm. Code4121-3-34(C)(3)(c). According to that rule, when a motion for recognition of an additional condition is filed subsequent to the filing of a PTD application, the motion shall be processed subsequent to the determination of the application.
 {¶ 35} Therefore, even if the industrial claim is now allowed for a psychological condition, relator is not entitled to have the commission consider that condition with his PTD application at issue in this case.
 {¶ 36} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of June 28, 2007, and to enter a new order either granting or denying the PTD application without consideration of Dr. Murphy's report. *Page 1